# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**HOMER GLENN BOLING,**

    **Plaintiff,**

    -vs-         Case No.  07-C-907

**STATE OF WISCONSIN,**
**WARDEN JEFFREY P. ENDICOTT,**
**CHARLES HUIBREGTSE,**
**HOLLY GUNDERSON, and**
**ERIC HAMERSMA,**

    **Defendants.**

## DECISION AND ORDER

    The plaintiff, a Wisconsin state prisoner, lodged a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on the plaintiff's petition to proceed *in forma pauperis*.

    Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is required to pay the statutory filing fee of $350.00 for this action. If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed *in forma pauperis*. To proceed with an action *in forma pauperis*, the prisoner must complete a petition and affidavit to proceed *in forma pauperis* and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when

funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20% of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.

In this case, the plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. The prisoner has paid an initial partial filing fee of $22.21. Additionally, he has made subsequent partial payments totaling $111.05.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully

2

construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for *pro se* prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

3

The plaintiff is incarcerated at the Redgranite Correctional Institution (RGCI). The defendants are the State of Wisconsin, RGCI Warden Jeffrey P. Endicott, Dr. Charles Huibregtse, Health Services Unit Manager Holly Gunderson, and Maintenance Supervisor Eric Hamersma.

According to the complaint, on February 28, 2005, the plaintiff slipped and fell and injured his back on the sidewalk in front of the G housing unit at RGCI. The plaintiff alleges that he fell because the sidewalk had slush and ice on it. He asserts that the warden, security director, maintenance supervisor and personnel, and housing unit staff all failed to ensure the proper cleaning, sanding, and salting of the sidewalk.

After the incident, the plaintiff alleges that defendants Dr. Huibregtse and Health Services Unit Manager Gunderson failed to provide him with adequate and proper treatment for his resulting back injury. Specifically, the plaintiff alleges that "he made numerous medical visits, and was frequently seen by the RGCI medical doctor Charles Huibregtse, who provided the minimal care and treatment that he could possibly get away with." (Complaint at unpaginated 5.)

> There was a serious health problem, but the RGCI medical treatment was not thorough, or for that matter, adequate. Not only was the pain affecting his job but so were the medical visits. Mr. Boling has been forced to deal with "painful symptoms, of overall stiffness of the bod, and painful and difficulty with urination and stools." Dr. Huibregtse failed to diagnose and treat. This has been a continual complaint of inmates at RGCI who are forced to accept the only medical attention they can receive, which is inadequate. Also, the complaints revolve around Holly Gunderson, the HSU Manager.

4

> She would not adequately screen Mr. Boling for the doctor's attention. She would change the doctor's mandated treatment or physician's orders. Ms. Gunderson has denied prescribed medications. She is a non-physician staff and left without adequate supervision. Some of her decisions were based on budget because position was admin clerk, and not on the needs of the inmates.

*Id.* The plaintiff further alleges:

> Repeatedly, Mr. Boling was prescribed Ibuprofen for pain, x-rays were taken, and his treatment included physical therapy. The Ibuprofen caused stomach problems so he was prescribed Tylenol. X-rays were taken but they were simply glossed over or improperly read. The physical therapy helped in short term result, but the long term effect was aggravating the injury, which later demanded surgery. Mr. Boling kept returning to HSU, but the depth of the examinations were insufficient. It sometimes took numerous medical requests to be taken serious. Holly Gunderson is the HSU supervisor and is responsible for determining priorities in seeing the doctor. There is a question whether if Ms. Gunderson has adequate training. However, in November 2005 and after may medical slips, Mr. Boling was referred for an MRI. In December 2005, an MRI was ordered and taken at the UW-Madison Hospital.

(Complaint at unpaginated 5-6.) The plaintiff alleges that in February 2006, he was diagnosed with spinal stenosis, "which is a constriction or narrowing of the spinal cord caused from a displaced disc" and that neurosurgery was recommended. (Complaint at unpaginated 6.) The plaintiff received the neurosurgery in January 2007. However, his surgery only alleviated some of the pain.

> In follow-up visits to HSU, Mr. Boling has expressed to the RGCI medical staff that he does still experience pain afer sitting awhile so he'll stand. But after about 45 minutes he begins to experience another pain. This has caused emotional distraught.

5

> The prolonged use of medications has messed up his stomach, possibly for the rest of his life. He has lost his job - forced termination due to medical absence, and he is now on light duty - no work/no school.
>
> The mental anguish Mr. Boling has been experiencing has been draining. The continual frustration to get adequate and proper treatment has been maddening. The pain and suffering Mr. Boling has borne and endured has been prolonged, and not treated with the seriousness and urgency the injury should have received. The lack of care has been mostly due to RGCI's medical staff's lack of caring. They are the "pain professionals," yet they do not conduct themselves as such, and thereby, Mr. Boling has suffered irreparable damage. Had Mr. Boling been on the outside, he would have received adequate and timely care for his medical needs, and possibly permanent damage would have been prevented. The prolonged suffering certainly would have been.

(Complaint at unpaginated 7.)

For relief, the plaintiff seeks $180,000 in compensatory damages for "pain, injury, and suffering, mental anguish and frustrations, and injuries affecting Mr. Boling's quality of life"; an injunction that he receive a full physical at the UW Hospital and "[w]hatever diagnosis is determined, immediate treatment is given to the full extent possible to restore Mr. Boling as much as humanly possible to a life without constant and daily pain"; nominal damages at the court's discretion; punitive damages as determined by the court; and an injunction against RGCI to have maintenance personnel work second shift so that they are present during the times of inmate movement.

To state an Eighth Amendment claim, an inmate must allege only that prison officials responded with "deliberate indifference" to a serious medical need. *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976). A medical need is sufficiently serious where failure to treat it might result in further significant injury or the "unnecessary and wanton infliction of pain." *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (internal quotation marks and citation omitted). A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42).

In the context of medical professionals, "it is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v . Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006) (citing *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999)). Moreover, mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient. *Johnson*, 433 F.3d at 1013 (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cit. 1996)); *see also Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) ("To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted

7

professional standards as to raise the inference that it was not actually based on the medical judgment").

In this case, although the plaintiff's course of treatment following his fall may not have proceeded exactly as he liked and the outcome of his neurosurgery was unsatisfactory, the plaintiff's allegations regarding his medical treatment make clear that he was not treated with deliberate indifference. At most, the plaintiff states a medical malpractice claim. However, he does not state a claim under the Eighth Amendment.

Moreover, to the extent that the plaintiff advances a potential claim based on slush and ice on the sidewalk or the absence of caution signs near the sidewalk where he fell, his allegations amount only to negligence. *See Frost v. McCaughtry*, 215 F.3d 1329, 2000 WL 767841 at *2 (7th Cir. 2000) (unpublished). Negligence is not enough to sustain a claim under 42 U.S.C. § 1983. *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir. 1994); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996).

This plaintiff has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 [7th Cir. 1988], *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 [1989]).

**ORDER**

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and hereby is **GRANTED**.

8

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #4) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has brought an action that was dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $216.74 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS ALSO ORDERED** that a copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney

General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

**I FURTHER CERTIFY** that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3) unless the plaintiff offers bonafide arguments supporting his appeal.

Dated at Milwaukee, Wisconsin, this 28th day of April, 2008.

**SO ORDERED,**

s/ Rudolph T. Randa
**HON. RUDOLPH T. RANDA**
**Chief Judge**